Ms. McKee, please call the case for argument this afternoon. Case No. 24-2333 from the District of Minnesota, Heritage Construction, et al. v. Philip Keithahn, et al. Okay. Mr. Andresen, you are free to mute now. Thank you, Your Honor. May it please the Court, Counsel, my name is Scott Andresen. I represent the appellants, Philip Keithahn and Minnesota Medical University, LLC. We are appealing from a jury verdict that left Mr. Keithahn personally responsible for the financial obligations of Minnesota Medical University based on erroneous legal findings and prejudicial evidentiary and argument errors at trial. While we contend that all of the errors that we've assigned in our briefing have merit, I don't have time to discuss them all today, so I'm going to focus on two primary topics in my remarks. First, it was legal error for the District Court to deny summary judgment and then judgment as a matter of law because the two verbal statements that underlie all of Heritage's misrepresentation claims were based upon future assurances that are not actionable under Minnesota law. And that error was compounded when the District Court refused to give a requested jury instruction on that very issue. Second, I'm going to talk about the cumulative effect of several prejudicial evidentiary errors and improper argument by Heritage that warrants a new trial. The two verbal statements that underlie all of the misrepresentation claims in this case. First one, January of 2019, Heritage claims that Mr. Kyton said on behalf of MMU, upon closing the loan, the project would be funded. That's the entirety of the representation. Second, in February and March of 2019, Heritage contends that Mr. Kyton said on behalf of MMU, there would be $7 million for construction after closing on financing. So does it matter, counsel, that there is a presently known contingency that was not relayed in those comments? It would matter if there was information to suggest that it was presently known. But there wasn't. All of the evidence at trial, which came from Mr. Kyton himself, about what information he had at the time he made these statements, says that it was based entirely on projections by the investment banker Loop Capital. I'll go to a couple of documents that Heritage contends underpinned those statements. One of them is the trust indenture. It's Exhibit 47 to their trial documents in their appendix. And it references the precondition limit, and there's lots of information in their briefing about that precondition limit. What they don't point out, for your honors, is that that document is dated April 1st, 2019. It didn't exist when these statements were made. These statements were made in January of 2019, February of 2019. The indenture didn't exist as of that date. It could not be the underpinning of these forward-looking statements. So they ask you to look at another document, Exhibit 18, in their appendix. This is an investor presentation by whom? Loop Capital. In it, Loop Capital says that the medical school will have, quote, ample liquidity. And they say we can look back to that to tie these statements that were made later to suggest they were past or present known facts. What they don't point out is that on page 2 of that exact investor presentation, there's a four-paragraph disclaimer that said it is a forward-looking projection that cannot be relied upon. So what we have is we have forward-looking projections from an investment banker that underlie the two forward-looking statements by Mr. Kaiton about if we close on the financing, there would be money from construction. That is a future assurance. The court made a legal error in letting that get to the jury. Is it an if or a when? The closing, no one really talks about what that means. I mean, I know generally what it means, but here, what are we talking about? What we're talking about, thank you for the question, is bond financing. And certainly, MMU was hopeful that it would get the bond financing, the type of financing that Loop Capital was putting together. And so it was a if we get or a when we get, and the hope was that it was a when, but when these statements were made in January and February of 2019, it was an if. It wasn't a done deal. Financing hadn't closed. And all that Mr. Kaiton had to go on in any statements that he made prior to April of 2019 were the projections from Loop Capital. And this may dovetail into your next, the Part B of this first issue, but is that a question then for the jury to determine rather than as a matter of law if it's a closed call? It could be. And at a minimum, it should have been. And that does dovetail into my next argument. We think that there is, there was not enough information underpinning those two forward-looking representations to have sent this to the jury. But, so there, if you review this on a de novo basis, it's a legal issue, we think you can say as a matter of law that the district court got it wrong and reverse on the issue of negligent misrepresentation. But I acknowledge the next half of this. At a minimum, the jury instruction should have been given. And we requested it. We requested an instruction that said, a misrepresentation claim cannot be based on future assurances. Did that only apply to fraudulent misrepresentation? Thank you for the question, Judge. It did not. And, in fact, we, if we look at it, it says a misrepresentation cannot be based on future assurances. It does not say a fraudulent misrepresentation cannot be based on those. And I would directly to the Court of Appeals to say, I don't know whether you call them a package or what you call them in your practice, but was it within instructions about fraudulent misrepresentation? It was in instructions. And I'm looking now at our appendix. I'm sorry, this is Appellee's Appendix, page 62, if you want to have it, right, where we label it the way we did it, is fraud and misrepresentation. And we were talking about general instructions that did apply to both, right? And, in fact, we give the pattern instruction from the State of Minnesota Jury Guide. And then we had two special instructions that we requested. One is this one that I just read you. A misrepresentation claim cannot be based on future assurances. And we cite it. Right below that, we ask for a separate one. Statements of prediction, opinion or puffery cannot form the basis of a fraud claim. We did delineate on that one because that's the law. On the future assurance, we did not delineate intentionally because the law is in Minnesota that a future assurance cannot be the basis of either a fraudulent or a negligent misrepresentation. That's why we ask the Court to give the instruction. Are you contesting the way the district court instructed on fraudulent misrepresentation? I know you separately wanted your specific language. We are not contesting the way they, we're not appealing the fraudulent misrepresentation claim because we want it. Do you think that, how about this, fair enough, do you think that that was improperly instructed? Not the base instruction. The elements of fraudulent misrepresentation were accurately given. It is the special instruction that we requested that would apply to both that we're saying was the error in not giving. This Court has set the standard for this type of an argument. In your American Family v. Graham case, you said the district court abuses its discretion when the omitted instruction, number one, correctly states applicable law, number two, addresses matters that are not adequately covered by the charge, and number three, involved a significantly important argument to the party who's asking for the instruction. All of those are met here. And this special, the instruction that you're arguing for now was applicable to, in your mind, both fraudulent misrepresentation and negligent misrepresentation, and only those two? Yes, it was. Right? And we asked for it before trial, and we asked for it again after trial in multiple charge conferences. If you review the transcript, it will show we asked for it over and over again. And what the district court said is, I think it's going to be confusing because it's tantamount to saying past or present material fact. And I understand that argument. While I didn't agree with it at the time, I understand it. Okay? But there's a problem with that. We know that this is a correct statement of the law. The district court acknowledged that it's the correct statement of the law. So now we're into element two of your American Family test. Was the future assurance issue adequately addressed by the past and present material fact? And that's really what the district court said. It was if we were talking about fraudulent misrepresentation, but we're not. We are appealing negligent misrepresentation. And when the jury is applying these two statements to the various elements of the claims, when it gets to negligent misrepresentation, what doesn't it see? It doesn't see any reference to past or present material fact, because that's not one of the elements, and it doesn't see a statement that a negligent misrepresentation can't be based on a future assurance. That shows you it wasn't part of the charge. The other thing that's important to this issue, right, one of the things this Court has looked at is did — even if there was prejudice, did it have some outcome on the effect of the trial? There was a mixed verdict on this issue, right? They said no on fraudulent misrep, yes on negligent misrep. District court heritage says that shows you that the jury got it right. I think it shows you that they got it wrong, because the instruction wasn't there. They found no liability on fraudulent misrepresentation, because they were told that those two statements had to be one of past or present existing material fact, okay? They were not told the past and present material fact element, nor were they told the future assurance element as it relates to negligent misrepresentation, and they found liability. The jury also found liability on the fraud by omission, right? They did. All right. And so that dollar amount for fraud by omission and negligent misrepresentation, exact same dollar amount, right? I believe that's correct. And you don't get — it's not a double recovery? Correct. So what would happen if — to go back to trial on that claim, you wouldn't get any more — there wouldn't be any more — it wouldn't change the result, would it? Well, thank you for the question. I believe that if all you did is reverse on the issue of negligent misrepresentation, right, the fraud by omission is still there. If you remanded for a new trial, because the instruction was missing, right, then we'd have a new trial on that issue. Fraud by omission was still there. Acknowledge that. Here's where we contest that you should order a new trial on all of the issues, and that's the second primary point that I'd like to make. And that is, Heritage clearly violated a motion to eliminate order in court during trial. Before you get to this, so I don't forget, so the relief is — if the relief is dependent upon your second argument, is that correct? The relief on the fraud by omission claim is dependent on our second argument, right? And I'd like to make it briefly, if I could. I'm into my rebuttal time, but I'll make it and take my chances. We're asking for a new trial on all of the issues based on the conduct and evidence that came in at trial that shouldn't have. This Court's precedent says that improper evidence or testimony is prejudicial where it produced some effect on the jury's verdict and was harmful to the substantial rights of the other party, and you should look at whether or not curative instructions were given. A couple things happened. Before the trial, we asked for a couple of motions eliminated. Number one, we asked to preclude evidence that Mr. Kaiton had attended Harvard. The Court didn't agree with us that that would cause prejudice, but did tell Heritage not to dwell on it. They brought it up seven times at trial and during their closing argument. Is that enough to reverse it? I'm not saying it is, but it's one piece of the puzzle. We also brought a motion eliminated to say they shouldn't be able to tell the jury that Mr. Kaiton owned the bank that he worked for, because that would indicate deep pockets. It would cause prejudice. The district court shared our concern, used the words, we have concerns about the deep pocket argument, and said, motion granted. You are not to bring up bank ownership. But we start trial. We're in the opening statements, and Heritage tells the jury right out of the gate, by the way, we're suing both MMU and Mr. Kaiton, but MMU can't satisfy a verdict. They're functionally bankrupt, so don't blame them. You've got to blame that guy. That was the theme of their argument in this case. Blame the Harvard-educated bank owner who can satisfy a verdict because MMU can't. Now, they hadn't brought up bank owner yet, because they've been told not to, but in the middle of trial, they asked the judge, we think they've opened the door. We should be able to bring in the evidence that he owns a bank. Judge Thunheim said no, they haven't. Minutes later, they asked the question. They didn't use one word. It was one question, right, counsel? Well, it was one question. Yeah, proceed. Yep. But it was, aren't you the majority owner of the bank holding company? Directly violating the court's order. And the judge found in his post-trial decision that this was a clear violation of his order, right? And he had serious concerns about it. But they weren't done. By the way, at the beginning of that opening statement, we asked for curative instruction because they kept talking about MMU's ability to satisfy a verdict, and the judge said no. So now in closing argument, they tell the jury again, blame the Harvard-educated bank owning guy who's got deep pockets because MMU isn't worth anything. This Court has said in the Halliday case and the Griffin case that that is prejudicial error. Counsel, your time's expired. Thank you. I will give you one minute in rebuttal, even though you just burned it. I appreciate that. And so you'll have one minute when we get to that stage. Thank you. Mr. Hart. May it please the Court. My name is Kyle Hart. I'm the attorney representing the appellee in the case. With me, I have two of the plaintiffs in the case, Jennifer and Andrew Christensen, in the back of the room. Wow, we've got a lot to cover here in a very short period of time. They have two components of their argument. One is obviously that there was an erroneous failure to dismiss the claim for fraud on summary judgment, and that was amplified by not granting a new trial on it or directing a verdict as a matter of law. The second one has to do with the discretionary issues of not granting a motion for a new trial. I'm going to first address, in general and very quickly, the notion that Judge Thunheim abused his discretion in failing to grant the appellants a new trial. At the time of this trial, Judge Thunheim had served as a judge on the district court of Minnesota for 28 years. He had been the chief judge for seven years, and this case was the last case that he was trying before he went on to senior status. I did a quick Westlaw research project, and we could not find any case in the 28 years that Judge Thunheim was sitting on the bench where this court, the Eighth Circuit, had ruled that he abused his discretion in not granting a new trial in a jury verdict case. My research may not be perfect, but I trust my minions, and they tell me it's true. They looked, and there is no case. This would be the first time. Is that a propensity argument? You're right, or something. Go ahead. It's just that granting a motion or accusing a judge of abusing his discretion in not granting a new trial is a bridge too far for a case like this and for a judge like Judge Thunheim. It didn't happen, and it shouldn't happen in this case. But the judge, then I guess Chief Judge Thunheim, did find that there was some concerning conduct at the trial. He did. But he also ruled that it was not sufficient in his discretion to warrant a new trial, and so he denied it. And I think that's the key point. It's a high standard to meet, and the evidence in this case doesn't meet it. He was in the best position to judge this case and make a determination as to whether a new trial was warranted or not. So do you concede that there were, I guess, inappropriate lines of questioning or argument by the appellees? I think some of it was close, but I do not think we went over the line. Now, I'll explain that as quickly as I can briefly, but no, I don't think that there was anything that was so prejudicial that it would have warranted a new trial. And I'll get to that. You know, as we said, this case is complicated. It lasted five days. The transcript is 934 pages. There were hundreds of exhibits that were introduced, and the jury returned a mixed verdict. They didn't grant us relief on all of our claims, and they didn't give us all of the money that we were asking for, which Judge Thunheim heavily relied on in saying, I don't think that there was too much prejudice here because the jury rendered a mixed decision. This argument about whether it was a past or present fact versus a future prediction was amply covered by Judge Thunheim and his decisions. This was not just a case where there were a few isolated early-on representations. It went all the way through construction. There were, and it wasn't just a case where there were a few isolated early-on representations. It wasn't just fraudulent inducing the Christians to enter into the General Agreement of Indemnity. That was a piece of it. But it was also a situation where they were telling us the money is there. We have closed on the bonds. The money is there. It's earmarked for construction, and there are no contingencies that will make it go away. It's there. Go to work. And that's what  And were those words used, counsel? Are those words in the record? Yes, I believe they are. The words you said. The word is not there.  The word contingency I don't believe was actually used. It was once you start, it can't stop, and the money will be there. Those words were used. Okay. If we do a word search, we'll find those words. Yes, you will. Okay. It can't go away, basically was what they said. We have $7 million that is there, and it's enough to cover you. And if you run up against that and you spend it, we would have stopped, and that didn't happen. Those are not predictions of future. Those are we have the money. Go to work. It's going to be there and pay you. And they made those representations when they knew that was not true. They absolutely knew it. At page 10 of our brief, we have a list of citations to evidence that the jury could have believed that says when they made those representations, they knew it wasn't true. Okay. The opposing counsel says it's linked to the closing. Upon the closing, it will be available. And it closed before we started construction. And so that's when we went to them and said, okay, it's closed. We have the money and we can start work, and the answer was yes. So it was on the closing. The early stuff, when they didn't know what the indenture document was going to say, yeah, that would be more of a lie. But once they closed, they knew what the financing was, and they knew that they didn't have enough money to cover construction past the $7 million, but they told us they had that, and then they didn't. And the documents clearly proved they didn't have that, and they knew it. The jury instruction argument that they were entitled to these instructions is puzzling to me. The jury instructions, first of all, we had a claim for fraud, intentional fraud, I call it. We had a claim for negligent fraud. We had a claim for fraud by omission. We had an indemnity claim, and we had a breach of contract claim. The jury instructions that were given by Judge Thunheim for the intentional fraud, for the fraud by, negligent fraud, fraud by omission, were all the standard jigs, we call them jury instruction guides, out of Minnesota foreign book. Verbatim, they were exactly what the Minnesota judges had been upholding for umpteen years. If you want a fraud case, this is the instruction. If you want a fraud by omission claim, this is the instruction. They're not mandatory in Minnesota, correct? Not mandatory.  But they're given all the time. That's where we go. It's a green book about your big, and that's where you go to get your instructions, and that's what Judge Thunheim gave them verbatim. The curious thing about that, and they make an argument here that Judge Kelly picked up on, is they say, well, to show how important it was, when the judge included an instruction, or when the instruction itself said, you have to have a present fact for the intentional fraud, they ruled against us. But when the instructions for negligent instruction, which doesn't have that same verbiage, they said, that's when you got them. You won that claim. That's because it was missing. The fallacy in that argument, as Judge Kelly points out, is that no, the instructions for fraud by omission, which was basically our major part of our case, includes that language. The fraud by omission jig says you have to prove present facts or past facts were misrepresented. That's included as part of the instruction for fraud by omission, and the jury ruled in our favor on that. And that's because I believe that was part of the biggest part of our case, was they omitted to tell us that what they told us was wrong. They told us the money's there, it's going to be there for you, $7 million only for construction, blah, blah, blah. They knew as soon as they closed, that was not the case, and that was present fact, that the jury was entitled to find out what constituted fraud by omission. The other thing I'd like to point out is they make a lot about the jury instructions, but if you look at the transcript, you will find that the jury instructions were, as given, were approved. If you go to page 786 and 787 in the transcript, Judge Tunheim goes through the instructions, and he gives the exhibit 15, or instruction 15 was fraudulent misrepresentation. He then goes to exhibit instruction 16, which was fraud by omission, and then he goes to 18, which was negligent misrepresentation claims, and he asks, what do you guys think about these instructions? And the answer by Mr. Kitan's counsel was at line 14 on page 787, says, okay, we're good. The claim now that those instructions were erroneous and they were entitled to this instruction or that instruction doesn't cut it. We use the standard jigs that are been approved a hundred times in Minnesota for these kind of claims. They were specifically asked, are you good with these? And they said yes. But didn't the district court say after the verdict that they hadn't waived those arguments? He was trying to protect everyone, I believe. Judge Tunheim is a gentleman. I think he was protecting, quite frankly, he was protecting me at time during the trial. He was protecting the other side at time of the trial. Right here, it's been black and white. But why wouldn't we defer to the way the district court viewed what happened? I think you should, and including particularly the instruction that he did not believe there was sufficient prejudice to justify granting a new trial. That was his view, and I don't know why you would take one side of his view and then not the other. So I agree. He said we violated some of these motions in limine. I disagree with that. Let's focus on the two things that were the big one. One was the instruction with regard to the Harvard thing. There was no motion in limine granted on that. He denied it. And yet he let them, you know, he considered their argument that we shouldn't have said it. But the fact of the matter is there was no motion in limine. The standard is if you're going to violate a motion You mean no motion in limine was granted. He denied the motion in limine. He denied the motion. So it was not granted. So there was no motion in limine that was specific, and there was no clear violation by us because what he said was don't dwell on it. Is mentioning Harvard seven times during a five-day trial dwelling on it? Particularly when they introduced Exhibit 38 is his bio where he specifically says I got a Harvard MBA. They put that into evidence. The jury took that back to the room. We have no idea what they did with it, if anything, but I think you can assume that it was admitted in evidence by them when of only 42 exhibits that they introduced. We were the plaintiffs, so we were stipulating on exhibits. How lengthy was that exhibit? I don't really remember, Your Honor. I don't think it was long. Just like a couple page bio, if I recall correctly. And it says right in there he had a Harvard MBA. It also said that he was the majority owner of not the bank. It was of the bank's holding company. That's why I don't think we actually violated the motion in limine with regard to claiming ownership in the bank, because we were not talking about the bank. We were talking about a holding company. Again, if there was a motion in limine granted, which it was, it said I don't want you to talk about ownership of the bank. We did not ask about the bank. We were asking about a holding company, which was up on top. But again, that same exhibit said he was the majority owner of the bank. So how was there any prejudice, even if we crossed the line in talking about that? I thought one of these exhibits was really extensive and lengthy, and the jury would have really had to peruse through it in a lot of detail to find some of the information that you've highlighted. Those statements were not complicated or difficult. That was a several page document at most. It was his bio. It was saying, you know, who this guy is. So, no, I don't think there was any violation of any motion in limine. But Judge Thunheim gave them the benefit of the doubt and said I'm still going to rule on them, and my decision is there was not enough prejudice to justify granting a new trial. The other thing is, in closing argument, Mr. Kaitan's attorneys argued specifically it's at page 838 and 841 that there had to be misrepresentations of present and past facts with regard to all of the claims for fraud, fraud by omission, intentional fraud, negligent fraud. If you look at page 838, he talks about the instructions and he says so on the left here is instruction number 15, which is the instruction for fraudulent misrepresentation, and on the right is the negligent misrepresentation, instruction 18. And he says you'll see that both of those have five elements. They're very similar. But they're going to have to prove that there were false representations of past or present material facts. So he not only gave the standard jigs that had it in it, exactly as they were given, they didn't object at the time the instructions. They had an opportunity to say I don't like those and they said they're good. And then they argued them to the jury as if they were in there with regard to all of the claims. And if you look at the Lincoln Composite case, it's a beautiful site at page 35 of our brief. They specifically say that error in instructions was harmless where counsel was still permitted to make argument consistent with the rejected instructions. Counsel, your time has expired. Thank you for your argument. Thank you, Your Honor. Mr. Andreessen, you'll have a minute. It was difficult to know what to do in one minute. I've got six things. I'll try to come up with two. Number one, I have great respect for Judge Thunheim. I'm sure all of you do. That is not reason alone to not say that there was prejudicial error if, in fact, you all find in your wise discretion that there was and there was. Number two, this idea that there were all kinds of documents and representations that happened all through construction, those go to the fraud by omission claim. That's not on appeal here, except for the new trial misconduct piece, right? The two misrepresentations, even Judge Thunheim acknowledged there are only two, and I already read them to you. All that other conduct that he was just talking about, that went to the fraud by omission claim. It's not relevant to our appeal here. The negligent misrepresentation instruction does not include the future assurance language. And just review the transcript. I asked for it over and over again. At some point when the judge tells you no, you have to say, okay, I'm fine. And that's what happened. But I asked multiple times for that instruction. Last, most importantly, please read the Halliday case. The case says this. Improper financial condition evidence and argument is utterly repugnant to a fair trial. It has been almost universally held that the receipt of such evidence constitutes prejudicial error sufficient to require reversal. Thank you for your time. Thank you. Case number 24-2333 is submitted for decision by the Court. Ms. McKee, is that our only case this afternoon? It is, Your Honor. We're adjourned until 9 o'clock tomorrow morning.